FILED

MAY 12 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYRONE EARL WALTON,

        Petitioner,

    v.

JEAN HILL, Superintendent,
Snake River Correctional Institution,

        Respondent.

Civil No. 05-1125-AC

FINDINGS AND RECOMMENDATION

      MARK BENNETT WEINTRAUB
      Assistant Federal Public Defender
      151 W 7th Ave
      Suite 510
      Eugene, OR  97401

        Attorney for Petitioner

      JOHN R. KROGER
      Attorney General
      SUMMER R. GLEASON
      Assistant Attorney General
      Department of Justice
      1162 Court Street NE
      Salem, OR  97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus should be GRANTED IN PART and DENIED IN PART.

## SUMMARY OF FACTS[1]

On May 16, 1987, Petitioner and Jolene Abbott went to a Minit Mart convenience store at Southeast 39th and Yamhill Streets in Portland. Petitioner was wearing a cap to disguise a distinctive half-moon scar on his forehead. Petitioner, who was armed with a sawed-off shotgun, robbed the Minit Mart.

Early in June, 1987, Petitioner and Marion Tillman drove to two convenience stores in the Beaverton area. Petitioner told Tillman that one of the stores would be "a good lick," which Tillman understood to mean it would be a good target for stealing money. Upon returning to Petitioner's house, Petitioner went inside and came back out with a sawed-off shotgun. He showed Tillman the shotgun and asked, "Do you think [this] will scare somebody?"

A few days later, Petitioner asked Tillman to drive him to a Plaid Pantry convenience store (the "Plaid Pantry") at North Killingsworth and Denver Streets in Portland. Tillman first agreed, but then changed her mind because she "didn't want to be involved."

After the events with Tillman, Petitioner and Abbott rented a car in Portland to drive to Colorado. They returned to Portland on June 20, 1987. The two spent June 21, 1987, engaged in

---

[1] This summary is derived from the record and from the Oregon Supreme Court's decision in *State v. Walton*, 311 Or. 223, 809 P.2d 81 (1991).

2 - FINDINGS AND RECOMMENDATION -

shoplifting, selling the proceeds of their thefts for money, and using the money to buy cocaine, which they then consumed.

In the early hours of June 22, the rental car was vandalized. Petitioner and Abbott decided on a likely suspect for the vandalism. They picked up the sawed-off shotgun from Petitioner's mother's house and drove around until they found the suspect and threatened him. Later, Petitioner, Abbott, and another friend, Marcia Harris, attempted to the re-contact the person they suspected of vandalizing the rental car. They failed, and returned to Petitioner's mother's house to consume more cocaine.

At about 8:00 a.m., on June 22, 1987, Abbott drove Petitioner in the rental car to the Plaid Pantry. Petitioner was wearing a blue baseball cap, a black sweatshirt, black jeans, and tennis shoes. Petitioner carried the sawed-off shotgun in a bag. He got out of the car, told Abbott to keep the motor running, and went into the store.

While sitting in the car, Abbott heard a shot. When Petitioner came out of the store, he was sticking the sawed-off shotgun back in the bag. Abbott asked Petitioner whether he had shot somebody. Petitioner answered that he had shot the Plaid Pantry clerk because "the man was stepping from the counter like he was going to go step on an alarm or something."

Minutes later, the Plaid Pantry clerk was found dead beneath the store's open cash register. The cause of death was shotgun wounds to the chest and heart. An audit of the Plaid Pantry cash register showed a shortage of $79.00.

No one witnessed the actual shooting of the store clerk. Witnesses outside the store at the time of the incident described the suspect as a slender, young, black male wearing a cap and dark

jogging clothes.  None of the witnesses positively identified Petitioner as the man they saw.  One witness saw a car leaving the scene which matched the description of the one Petitioner and Abbott had rented.

Detective Rubey, who responded to the Plaid Pantry after the shooting and robbery, noted there was a single dollar bill remaining in the cash register drawer.  The alarm system in the Plaid Pantry would have been triggered by the removal of the final dollar bill from the till.  Rubey's testimony was contradicted by the testimony of Gordon Bloom, another police officer at the scene, who specifically recalled that the cash register drawer was open and was "certain that the till was empty."

Following the crime, Petitioner and Abbott returned to his house.  At Petitioner's request, Abbott hid the sawed-off shotgun in the neighborhood.  Unknown to Petitioner, Abbott put the blue baseball cap under a couch in the dining room of the house.  She hid the cap because she believed Petitioner would be less likely to commit more robberies if he could not find it, because he needed the cap to cover the distinctive scar on his forehead.

The police had no suspect for the Plaid Pantry crimes at first.  They did, however, develop a theory that the Minit Mart robbery had similar characteristics and might have been committed by the same suspect.

On July 28, 1987, Portland Police Officer Lloyd Higgins received a telephone call from an unidentified man who told him that Jolene Abbott was responsible for the robbery and shooting at the Plaid Pantry.  That same day, Portland Police Officer William Klaus responded to a domestic-violence report involving Abbott and the Petitioner.  After Abbott left the residence, Petitioner

approached Klaus and said ". . . that he had some information that Ms. Abbott had been involved with another gentleman, and that she had driven a car that was used in a robbery."

Detective Law, who was assigned to investigate the Plaid Pantry murder and robbery, interviewed several persons, including Abbott, Leshia Hart, and Anthony Elliott. As a result of the information he obtained, on August 5, 1987, Law searched for and found the sawed-off shotgun in some bushes, where Abbott said she had hidden it on the day of the crime. Attempts to develop fingerprints from the weapon were unsuccessful.

On August 7, 1987, Law obtained a warrant for Petitioner's arrest. Law and Detective Nelson drove to a house where Petitioner was then living with Marcia Harris. The detectives saw Petitioner standing in front of the house talking to Harris. Law addressed Petitioner by his name. Petitioner responded that was not his name, and gave an alias. Law had a photograph of Petitioner, and told him he knew who he was. Law then told Petitioner he was looking for Abbott, whom Petitioner denied knowing.

Law asked Petitioner whether the detectives could speak to him. Petitioner agreed, and invited the detectives to the front porch of the house. A wide-ranging discussion followed. Law asked Petitioner if he owned a sawed-off shotgun, which Petitioner denied. Law showed Petitioner the shot-gun he had retrieved from the bushes, and Petitioner denied having seen it before. Law asked Petitioner about his possession of a rental car matching the description of the car seen leaving the Plaid Pantry. Petitioner denied having a rental car.

Law also asked Petitioner whether he had ever telephoned "911" to implicate Abbott in the Plaid Pantry crimes. Petitioner denied telephoning "911." Law asked Petitioner if he would go to

5 - FINDINGS AND RECOMMENDATION -

the police station voluntarily to "clear up questions" about whether he had called "911" to implicate Abbott. Petitioner agreed.

At the police station, the detectives advised Petitioner of his *Miranda* rights, which Petitioner said he understood and was willing to waive. Petitioner agreed to talk to the detectives. Petitioner admitted he knew Abbott and that he had lived with her, but he stated she had moved out weeks earlier and he had not seen her for several days. Petitioner admitted calling "911" on July 28, 1987, to implicate Abbott in the Plaid Pantry crimes. He said he did so because he was angry with Abbott for terminating their relationship and moving from the house. He stated the information he had given to the "911" operator was not true.

Petitioner acknowledged knowing Tillman, but denied having talked to her about any robbery. He also denied owning or wearing a cap, denied possession a sawed-off shotgun, denied having seen State's Exhibit #14, and denied possessing a rental car.

Law then tried to question Petitioner about the Minit Mart robbery. Petitioner responded he did not want to say any more, and the interview was terminated. The detectives took Petitioner to an elevator for transfer to the jail intake section. As he got on the elevator, Petitioner asked Law what he was being charged with. Law answered that Petitioner was being charged with first degree robbery and aggravated murder. Petitioner then exclaimed, "You got me on the first one, but you can't prove the other one." When law asked Petitioner what he meant by "the first one," Petitioner answered, "the robbery." The trial court interpreted Petitioner's answer to be an admission that he had robbed the Minit Mart on May 16.

## PROCEDURAL BACKGROUND

A Multnomah County grand jury indicted Petitioner on four charges: (1) Aggravated Murder, committed personally and intentionally in the course and furtherance of Robbery in the First Degree; (2) Aggravated Murder, committed "in an effort to conceal the identity of a perpetrator of the crime of Robbery in the First Degree;" (3) Felony Murder, with Robbery in the First Degree as the underlying felony; and (4) Robbery in the First Degree.

The trial judge appointed attorneys Mark Sussman and Michael Bailey to represent Petitioner. On September 15, 1987, they moved to withdraw on the grounds that they disagreed with Petitioner about the defense theory. At a hearing on their motion, Sussman stated:

> If the Court is aware of it, in my judgment, should he be convicted of aggravated murder, there is a very strong possibility that this -- the Jury would return a verdict that the State is asking for, and I'm not really personally or professionally willing to commit myself to a kamikaze defense. There may be other lawyers on the panel who would have a different professional judgment than I do of how to defend the case.

(Transcript, Volume I, page 3). The trial judge granted the motion to withdraw, and appointed Robert Goffredi and Tommy Hawk as substitute counsel.

On November 12, 1987, Goffredi moved to withdraw, citing medical issues and the pressure of other commitments. The court appointed David Degner and Laura Graser to represent Petitioner. Trial was originally set for February 4, 1988, and subsequently re-set to February 18, 1988.

Degner and Graser filed numerous pre-trial motions, including motions to suppress evidence, to challenge jury selection procedures, and to challenge the death penalty. On February 18, 1988, trial commenced with jury selection. Following the guilt phase, the jury unanimously convicted Petitioner on all four charges. A penalty phase commenced, and on March 18, 1988, the

jury returned a penalty phase verdict that required Petitioner be sentenced to death.  On March 21, 1988, the trial judge imposed a sentence of death.  The court did not impose any sentence on the felony murder or robbery convictions.  On November 2, 1988, the trial judge entered a judgment of conviction reflecting the death sentence.

As a result of the death sentence, the case was automatically reviewed by the Oregon Supreme Court.  The Oregon Supreme Court issued a written opinion affirming Petitioner's convictions, but vacating the sentence of death.  The court remanded the case to the circuit court for further proceedings.  *State v. Walton*, 311 Or. 223, 809 P.2d 81 (1990) (*"Walton I"*).

In the meantime, on November 30, 1988, Petitioner was sentenced in the Minit Mart robbery case.  The court in that case imposed a 20-year sentence, with a 10-year minimum, and ordered that the sentence be served consecutively "to any penitentiary sentence currently being served or ordered to be served as a result of [Petitioner's] conviction for Aggravated Murder."

In the Aggravated Murder case, Degner resumed his representation of Petitioner on remand, and the state indicated it would again seek the death penalty.  Degner subsequently moved to withdraw on the grounds that a conflict of interest had developed with Petitioner.  Following a September 30, 1992, hearing on the motion, the court allowed Degner to withdraw and appointed Phil Margolin and Marc Cross to represent Petitioner in the second penalty phase trial.

On October 5, 1992, the second penalty phase trial began.  This time, the jury acquitted Petitioner of the death penalty.  In January 1993, the trial judge sentenced Petitioner to consecutive life sentences with a mandatory 30-year minimum for each Aggravated Murder conviction.  The judge merged the Felony Murder conviction with the first count of Aggravated Murder, and ordered

a 30-year dangerous offender maximum sentence with a 15-year minimum on the Robbery in the First Degree count, to be served consecutively to the aggravated murder convictions.  The judge ordered all of the convictions to run consecutively to the separate Robbery conviction in the Minit Mart case.

Following the re-sentencing, Petitioner appealed to the Oregon Court of Appeals.  The Oregon Court of Appeals remanded "with instructions to vacate the sentence for robbery and to enter amended judgment merging the conviction for robbery with the conviction for aggravated murder (count 1); otherwise affirmed."  *State v. Walton*, 134 Or. App. 66, 75, 894 P.2d 1212 (1995) ("*Walton II*").  The Oregon Supreme Court denied petitions for review filed by Petitioner and the state.

On remand, counsel submitted a memorandum of law urging the trial court to reconsider the imposition of consecutive sentences on the two aggravated murder convictions.  The trial court found, however, that "remand was limited to the particular actions specified [by the Court of Appeals]:  vacation of the robbery sentence and entry of amended judgment merging the lesser included offense with the greater."  Respondent's Exhibit 148, p. 2.  The judge believed that the limited remand restricted his authority to take actions outside the scope of remand, and declined to reconsider the consecutive sentences.  On March 6, 1996, the court entered an amended judgment, without a hearing and without Petitioner's appearance before him.  A corrected amended judgment was entered on March 18, 1996.

Attorney Cross attempted to advise Petitioner of the first amended judgment in a March 18, 1996, letter.  That letter was returned to Cross marked "refused," because his secretary had failed

to put a return address on the envelope and the prison mail room refused to accept it. It then "got buried" on his desk, and he forgot to resend it.

As of April 3, 1996, Petitioner had not learned of the amended judgment and wrote to Cross about his re-sentencing date, asking, "Do you think the court has delayed the hearing long enough?" Petitioner did not learn of the amended judgment until he received a May 9, 1996, letter from the Oregon Court Administrator's Appellate Legal Counsel James Nass advising that judgment had been entered on March 20, 1996, that Ness had discussed the matter with Cross, and Petitioner should contact Cross "concerning your rights and remedies in this matter." Petitioner then received a letter from Cross dated June 19, 1996, explaining what had happened and stating, "the delay in getting you these materials is totally my responsibility." He added, "the delay raises one more possible grounds [sic] for an ineffective assistance argument, at least in terms of your ability to have filed a timely notice of appeal."

Petitioner attempted to file a late *pro se* notice of appeal regarding the corrected amended judgment order. The Oregon Court of Appeals denied leave to file the late appeal and ordered dismissal. The Oregon Supreme Court denied review.

On February 6, 1997, Petitioner filed a petition for state post-conviction relief ("PCR"). Counsel was appointed to represent Petitioner, and on March 3, 1999, filed a formal Second Amended PCR Petition. Petitioner alleged 41 claims for relief, including ineffective assistance of counsel claims, prosecutorial misconduct claims, and trial error claims. On February 16, 2000, Petitioner's PCR case was tried to the court. During the trial, Petitioner requested additional time to review the memoranda filed by his counsel and respondent's counsel, and to "cite case law" in

support of PCR counsel's trial memorandum.  The judge granted Petitioner an additional 30 days to supplement the memorandum submitted by his PCR counsel.

On March 14, 2000, Petitioner filed his *Pro Se* Memorandum of Law.  Petitioner presented further argument, *inter alia*, that the trial could not impose consecutive sentences arising from the killing of one victim.  On March 31, 2000, Respondent filed a responsive memorandum, arguing the court should disregard the additional filings because they attempted to raise new claims of trial error, which were barred in any event because they were not raised on direct appeal.  Respondent noted Petitioner "does not allege that [appellate counsel] was constitutionally inadequate for not raising the ORS 137.123(4) argument on appeal."  Resp. Exh. 155, p. 2.

On April 12, 2000, Petitioner moved to amend his PCR petition to allege just such a claim of ineffective assistance of appellate counsel.  The PCR judge denied Petitioner's motion, finding that:

> Petitioner's motion is untimely and is in violation of the court's order of October 14, 1999, requiring pleadings to be in final form no later than 14 days prior to trial. There is no just cause for the untimely amendment and the interests of justice are not served thereby.  [Respondent] would be prejudiced by the allowance of the untimely amendment.

Resp. Exh. 164.  Petitioner moved for reconsideration, which was denied.  The trial judge ultimately denied relief on the merits of Petitioner's remaining ineffective assistance of counsel claims, and dismissed the trial court error and prosecutorial misconduct claims because they were barred.

Petitioner appealed, assigning error to five of the PCR court's determinations, including the denial of leave to amend the petition.  The Oregon Court of Appeals affirmed in a written opinion.

*Walton v. Thompson*, 196 Or. App. 335, 102 P.3d 687 (2004) ( *"Walton III"*).  Thereafter, the

Oregon Supreme Court denied review. *Walton v. Thompson*, 338 Or. 375, 110 P.3d 114 (2005).

On July 18, 2005, Petitioner filed his habeas corpus action in this court.  Counsel was

appointed, and on January 17, 2008, filed an Amended Petition for Writ of Habeas Corpus on

Petitioner's behalf.  The Amended Petition alleges several grounds for relief scattered amongst six

separate paragraphs.  For ease of reference, the various claims have been parsed out by category,

with reference to the paragraph number in which they appear in the Amended Petition:

1.      Petitioner's Due Process rights under the Fourteenth Amendment were violated when the trial court:

     a.      admitted evidence of a prior armed robbery (Amended Petition, paragraph X(D) (hereafter "Am. Pet., par. D")); and

     b.      imposed an amended judgment and sentence in Petitioner's absence (Am. Pet., par. X(F)).

2.      Petitioner's Due Process rights under the Fourteenth Amendment were violated due to prosecutorial misconduct "through the knowing presentation of false testimony." (Am. Pet., par. X(B)).

3.      Petitioner's trial counsel rendered constitutionally ineffective assistance under the Sixth Amendment by:

     a.      failing to exercise independent judgment and control over defense strategy (Am. Pet., par. X(A));

     b.      failing to seek lesser included offense instructions (Am. Pet., par. X(A));

     c.      failing to cross-examine the state's principal witness to elicit evidence that the shooting had been accidental (Am. Pet., par. X(A));

     d.      failing to discover or object to prosecutorial misconduct in the knowing presentation of false testimony (Am. Pet., par. X(B));

e.      failing to object to the prosecutor's misconduct in vouching for the credibility of witnesses and the prosecutor's office (Am. Pet., par. X(C));

f.      failing to assure Petitioner's presence at re-sentencing (Am. Pet., par. X(F)); and

g.      failing to communicate the entry of a new judgment to Petitioner before the time to appeal expired (Am. Pet., par. X(F)).

4.      Petitioner's appellate attorney rendered constitutionally ineffective assistance under the Sixth Amendment by:

a.      failing to preserve the issue of admission of evidence of a prior armed robbery (Am. Pet., par. X(D)); and

b.      failing to raise a statutory objection to consecutive life sentences for aggravated murder of a single victim (Am. Pet., par. X(E)).

In addition to the claims specified by counsel, the Amended Petition states that Petitioner:

> [R]ealleges and incorporates herein, insofar as permitted by this Court's rules, the claims and arguments set forth in the Trial Memorandum attached to his original Petition for Writ of Habeas Corpus and attached hereto as Exhibit 1 and the *Pro Se* Supplemental Memorandum attached to his original Petition for Writ of Habeas Corpus and attached hereto as Exhibit 2.

Am. Pet., par. X(G).

Respondent argues Petitioner procedurally defaulted all of the claims for relief except his claim that trial counsel failed to ensure Petitioner's presence at re-sentencing. With respect to this claim, Respondent argues the PCR court decision denying relief on the merits is entitled to deference in this court. As to the claims incorporated by reference to Petitioner's *pro se* submissions, Respondent argues they are not properly before this court.

## DISCUSSION

### I.    Procedural Default

#### A.    Legal Standards

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1);*Cook v. Schriro*, 538 F.3d 1000, 1025 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 1033 (2009). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Cook*, 538 F.3d at 1025; *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under the applicable state rules, the federal claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman*, 501 U.S. at 729-30; *Cook*, 538 F.3d at 1025. Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750; *Cook*, 538 F.3d at 1028.

### B.    Analysis

#### 1.    Trial Errors

##### a.    Admission of Prior Bad Acts Evidence

Petitioner alleges the trial court violated his due process rights by admitting evidence of the previous Minit Mart robbery during his trial.  Petitioner did preserve this claim of error at the trial level by filing a motion to exclude the evidence of the prior robbery.  On automatic direct review, Petitioner included the claim as one of his 36 assignments of error.  Petitioner's assignment of error and argument, however, was based solely on state law grounds.

To "fairly present" a federal constitutional claim to the state court, a petitioner must make the federal basis of the claim explicit either by citing to federal law or to the decisions of federal courts.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 527 U.S. 1087 (2000).  Failure to identify a federal claim or to cite case law which might alert the state court to the federal nature of a claim is not fair presentation. *Baldwin*, 541 U.S. at 33.

Petitioner did not fairly present his federal due process claim based on the admission of the prior robbery to the Oregon Supreme Court on automatic direct review.  Instead, the claim was presented solely on state law grounds.  The claim is procedurally defaulted, and because Petitioner presents no evidence of cause and prejudice or fundamental miscarriage of justice, the default is not excused.

### b.     Imposition of Amended Judgment in Petitioner's Absence

Petitioner alleges the trial court violated his due process rights when it imposed an amended judgment and sentence in his absence on remand from *Walton II*.  No direct appeal was taken from the amended judgment and sentence.  Petitioner did allege the due process violation in his state PCR proceeding.  Oregon law, however, generally prohibits PCR petitioners from raising a claim that could and should have been raised in a direct appeal, unless the failure to assert the claim constituted inadequate assistance of counsel.  Or. Rev. Stat. § 138.550;*Palmer v. State of Oregon*, 318 Or. 352, 356-58, 867 P.2d 1368 (1994).  The PCR trial judge specifically relied upon the rule stated in *Palmer* when he denied relief on Petitioner's due process trial error claim.

Petitioner presents no evidence to this court that the procedural rule invoked by the PCR trial judge was not independent and adequate.  Accordingly, Petitioner's trial error claims remain procedurally defaulted.  Because Petitioner presents no evidence of cause and prejudice to excuse the procedural default, he is not entitled to relief on these claims.

### 2.     Prosecutorial Misconduct

Petitioner alleges his due process rights under the Fourteenth Amendment were violated due to prosecutorial misconduct "through the knowing presentation of false testimony." In his Second Amended Petition for Post Conviction Relief, Petitioner alleged the prosecutor presented witness testimony to the jury during the original trial that he should reasonably have known was false. Resp. Exh. 126, pp. 16-17. The PCR trial judge found Petitioner's prosecutorial misconduct claims barred under *Palmer*. On appeal, Petitioner did not raise as error the PCR trial judge's conclusion.

16 - FINDINGS AND RECOMMENDATION -

Accordingly, Petitioner procedurally defaulted his claim of prosecutorial misconduct, and is not entitled to habeas corpus relief.

### 3. Ineffective Assistance of Trial Counsel and Appellate Counsel - Claims Not Alleged at PCR Trial Level

Petitioner alleges trial counsel was ineffective for failing to discover or object to the prosecutor's presentation of false testimony at the original trial, and for failing to object to the prosecutor's improper vouching for the credibility of witnesses and the prosecutor's office. Petitioner also alleges appellate counsel was ineffective for failing to fully preserve the issue of admission of the prior armed robbery. Respondent argues Petitioner procedurally defaulted these claims by failing to plead them in his original or amended PCR petition.[2]

Petitioner alleged 25 separate ineffective assistance of counsel claims in his Second Amended Petition for Post-Conviction Relief. Resp. Exh. 126. None of the alleged claims, however, were substantially similar to the claims set forth above. Raising some ineffective assistance of counsel claims in a PCR petition does not preserve all potential ineffective assistance of counsel claims. *See Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (*en banc*) (ineffective assistance claims are discrete, and each must be properly exhausted or it will be defaulted), *cert. denied*, 507 U.S. 992 (1993).

On appeal from the denial of PCR relief, Petitioner attempted to raise these claims in his *Pro Se* Supplemental Memorandum. Since Petitioner did not raise them in his formal PCR petition,

---

[2] Respondent argues an additional claim, that appellate counsel was ineffective for failing to raise a statutory objection to consecutive life sentences for aggravated murder of a single victim, is also procedurally defaulted because it was not included in Petitioner's original or amended PCR petition. That claim was, however, the subject of an unsuccessful motion to amend the PCR petition, and is dealt with at length below.

however, he could not present them to the state's appellate courts. *See Bowen v. Johnson*, 166 Or.

App. 89, 999 P.2d 1159 (2000), *rev. denied*, 330 Or. 553, 10 P.3d 943 (2000).   Accordingly,

Petitioner procedurally defaulted these claims and is not entitled to habeas corpus relief.

### 4.    Ineffective Assistance of Trial Counsel and Appellate Counsel - Claims Alleged in PCR Petition

Petitioner alleges trial counsel was ineffective for failing to seek lesser included offense

instructions, for failing to cross-examine the state's principal witness to elicit evidence that the

shooting had been accidental, and failing to communicate the entry of the modified sentence to

Petitioner before the time to appeal expired.   Respondent argues these claims are procedurally

defaulted because, although Petitioner presented them to the PCR trial court, he failed to include

them as assignments of error on appeal.

Respondent is correct as to Petitioner's claims that trial counsel was ineffective for failing

to seek lesser included offense instructions and for failing to cross-examine the state's principal

witness to elicit evidence that the shooting was accidental.  Petitioner did not include these claims

on appeal and, as such, they are procedurally defaulted.

Respondent is incorrect, however, as to Petitioner's claim that trial counsel failed to

communicate the entry of the modified sentence before the time to appeal expired.  This claim was

specifically raised in the Appellant's Brief submitted by Petitioner's court-appointed counsel as

Assignment of Error No. 4. Moreover, Petitioner sought and obtained leave from the Oregon Court

of Appeals to file a *Pro Se* Supplemental Brief.  Resp. Exh. 167, p. 5.   Petitioner's attorney

subsequently submitted the *Pro Se* Supplemental Brief. Resp. Exh. 169. The state moved to strike

the *Pro Se* Supplemental Brief, a motion the Oregon Court of Appeals denied. Resp. Exh. 167, p.

18 - FINDINGS AND RECOMMENDATION -

5. The *Pro Se* Supplemental Memorandum submitted by Petitioner also explicitly presents as a

federal claim his allegation that trial counsel failed to communicate entry of the modified judgment

before the time to appeal expired. Finally, in his Petition for Review before the Oregon Supreme

Court, Petitioner included as questions presented the following:

> 3.    Did the post-conviction court err in finding that trial counsel at the second
> resentencing (Mark Cross) was not ineffective when he failed to file for an
> appeal after the resentencing?

* * *

> 6.    Did the post-conviction court and the Court of Appeals err in rejecting the
> issues raised in petitioner's *Pro Se* Supplemental Memorandum, attached to
> petitioner's *Pro Se* Supplemental Appellant's Brief at ER 1-48?

Resp. Exh. 172, p. 2. This reference sufficiently presented the claims argued in the                                  *Pro Se*

Supplemental Brief to the Oregon Supreme Court. *Farmer v. Baldwin*, 346 Or. 67, --- P.3d ---,

2009 WL 777862 *3 (Mar. 26, 2009). Because Petitioner fully exhausted this claim, Respondent's

procedural default argument is incorrect and relief on the merits is discussed below.

### 5.    Ineffective Assistance of Appellate Counsel - Failure to Raise Statutory Objection to Consecutive Life Sentences

As noted above, one of the grounds alleged in Petitioner's habeas corpus petition which was

not originally raised in the PCR trial court is Petitioner's claim that appellate counsel was

constitutionally ineffective for failing to raise a statutory objection to consecutive life sentences for

the aggravated murder of a single victim. Petitioner attempted to amend his PCR petition to allege

this claim, but the trial judge denied the motion. On appeal and in his Petition for Review,

Petitioner assigned as error the PCR trial judge's denial of the motion to amend. Respondent

argues this claim for relief is procedurally defaulted.

The defining issue regarding this ground for relief is whether the PCR court's denial of the motion to amend was undertaken pursuant to an "independent and adequate" state rule.  If so, Petitioner is procedurally barred from asserting the claim in this court.

Under the independent and adequate state ground doctrine, a federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729.  The doctrine applies to bar federal habeas review when a state court declined to address a prisoner's federal claims on the grounds that the prisoner had failed to meet a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977).  In summary, "the procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'" *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989)).

In order for a state procedural rule to be deemed adequate, "the state law ground for decision must be well-established and consistently applied." *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003), *cert. denied*, 540 U.S. 938 (2003).  Stated differently, "[a] state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.'" *Poland v. Stewart*, 169 F.3d 573, 578 (9th Cir. 1998), *cert. denied*, 528 U.S. 845 (1999).

The fact that application of a state rule requires the exercise of judicial discretion does not necessarily render the rule "inadequate to support a state decision." *Bennett*, 322 F.3d at 583.

Rather, "judicial discretion may be applied consistently when it entails the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits." *Id.* (internal citations omitted). By further definition, "[s]tate rules that are too inconsistently or arbitrarily applied to bar federal review 'generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants . . . and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claim is unfair.'" *Id.* (quoting *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir.), *cert. denied*, 519 U.S. 1001 (1996)).

A federal court may not presume a state decision rests on adequate and independent state grounds. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). When a state court decision fairly appears to rest primarily on federal law or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, the federal court must "accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Id.*; *see also Harris*, 489 U.S. at 258 (federal courts will presume that state decisions do not rest on adequate and independent state grounds unless the state court clearly indicates to the contrary).

On federal habeas review, once the state has adequately pleaded the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner, who may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of state rule at issue. *Bennett*, 322 F.3d at 586.

Once petitioner has done so, the burden then shifts back to the government, and it bears "the ultimate burden of proving the adequacy" of the relied-upon ground. *Id.* at 585-86.

The rule governing amendment of state PCR petitions is set forth in Or. Rev. Stat. § 138.610, which provides that a court "may make appropriate orders as to the amendments of the petition or any other pleading, or as to the filing of further pleadings, or as to extending the time of the filing of any pleading other than the original petition." In *Ramsey v. Thompson*, 162 Or. App. 139, 144, 986 P.2d 54, 56 (1999), *rev. denied*, 329 Or. 589, 994 P.2d 130 (2000), the Oregon Court of Appeals held that this provision confers "'broad discretion' with respect to amendment of post-conviction pleadings,'" but that the discretion should be exercised "to comport with ORCP 23A's directive that leave to amend 'shall be freely given when justice so requires.'" The court further noted that the few cases that have treated the issue of amending a petition do not "explicitly identif[y] the criteria that inform and circumscribe the exercise of the discretion." *Id.* Still, the court noted, those prior cases at least "touched on" four considerations bearing on the appropriate exercise of discretion:

> (1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments.

*Id.* at 145 (citing *Temple v. Zenon*, 124 Or. App. 388, 862 P.2d 585 (1993); *Luther v. State of Oregon*, 83 Or. App. 336, 732 P.2d 24, *rev. denied*, 303 Or. 483, 737 P.2d 1249 (1987)).

Here, Petitioner did not attempt to raise his ineffective assistance of appellate counsel claim in the PCR trial court until nearly two months after his post-conviction trial on the merits. As detailed above, he did so only after Respondent made note of the absence of such a claim before

the trial court in a memorandum filed in response to Petitioner's *pro se* Supplemental Memorandum of Law.  The PCR trial judge denied Petitioner's motion to amend, finding that:

> Petitioner's motion is untimely and is in violation of the court's order of October 14, 1999 requiring pleadings to be in final form no later than 14 days prior to trial. There is no just cause for the untimely amendment and the interests of justice are not served thereby.  [Respondent] would be prejudiced by the allowance of the untimely amendment.

Resp. Exh. 160.

Under these circumstances, it appears the trial court's exercise of discretion to deny leave to amend was "applied consistently . . . according to standards that [were] known and understood within reasonable operating limits."  *Bennett*, 322 F.3d at 901.  The PCR trial judge considered Petitioner's request under the standards delineated in *Ramsey,* and the denial of petitioner's motion to amend his PCR petition was "adequate" to form the basis for procedural default.  Moreover, the trial judge's decision did not rest on federal law and was not in any way interwoven with federal law.

The Oregon Court of Appeal's decision was no less equivocal. In *Walton III,* the Oregon Court of Appeals did not directly address Petitioner's assignment of error on the trial court's denial of the motion to amend.  Instead, the court limited the opinion to Petitioner's trial error claim: "[w]e write only to address petitioner's assertion that the trial court erred in rejecting his claim that his consecutive sentences on two counts of aggravated murder were unlawful. . . ."  *Walton v. Thompson*, 196 Or. App. at 337.  The Court of Appeals pointed out that "[n]otably, petitioner did not frame [this] claim for relief in terms of whether he received adequate assistance of counsel." *Walton v. Thompson*, 196 Or. App. at 338.  The opinion further stated "[w]e reject without

discussion petitioner's remaining assignments of error." *Id.* at 351. As the only assignment of error relating to this claim was limited to the issue of the trial court's denial of leave to amend, the Oregon Court of Appeal's decision was also based on an independent and adequate state rule.

As noted, the Oregon Supreme Court denied review. Petitioner argues the lack of a written opinion at the highest state court level means this court cannot find the state court clearly and expressly relied on an independent and adequate state ground. The requirement that a decision be clearly and expressly based upon an independent state law ground applies only "where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Thomas v. Lewis*, 945 F.2d 1119, 1122 (9th Cir. 1991); *see also Ylst v. Nunnemaker*, 501 U.S. 797, (1991) (where the last reasoned opinion on the claim explicitly imposes a procedural default, the federal court is to presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits).

In this habeas action, Respondent explicitly pleaded the existence of an independent and adequate state procedural ground, the Oregon rule that all PCR claims must be pleaded in an original or amended PCR petition, or they are waived. Or. Rev. Stat. § 138.550(3). By extension, if leave to amend the PCR petition is denied, the claim cannot be brought upon appeal from the denial of PCR relief. As such, the burden shifted to Petitioner to show whether denial of leave to amend the PCR petition rested on an independent and adequate state procedural ground. Because Petitioner did not address the procedural default defense in his Memorandum in Support of Amended Petition for Writ of Habeas Corpus, the court requested supplemental briefing. Specifically, the parties were directed to address:

> [T]he issue of procedural default as it relates Petitioner's claim of ineffective assistance of appellate counsel for failure to raise a statutory objection to consecutive life sentences for aggravated murder of a single victim.  The briefing should focus on the independent and adequate state procedural rule doctrine and whether procedural default, if any, may be excused.

Docket Entry #67, July 3, 2008.

In his Supplemental Memorandum, Petitioner argues he fairly presented the issue of ineffective assistance of appellate counsel by explicitly raising it in his brief on appeal and his Petition for Review.  Petitioner's Supplemental Memorandum, p. 7.  Petitioner misses the mark. The last reasoned state court decision denied Petitioner leave to pursue his claim of ineffective assistance of appellate counsel purely on state procedural grounds.  The fact that Petitioner identified the PCR trial court's alleged procedural error as an appeal issue does not obviate the procedural default.  Whether a federal claim is "fairly presented" goes to the issue of exhaustion of remedies, not whether the state court's denial was based on procedural grounds.  *See Casey v. Moore*, 386 F.3d 896, n.23 (9th Cir. 2004) (discussing difference between fair presentation of a federal claim and application of the independent and adequate state law doctrine).

Moreover, in his Supplemental Memorandum Petitioner did not assert any specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the state rule concerning amendment of PCR petitions. *Bennett*, 322 F.3d at 586.  As such, Petitioner failed to satisfy his burden of placing Respondent's procedural default defense at issue.  Accordingly, the court finds Petitioner procedurally defaulted his claim that appellate counsel was ineffective for failure to challenge the consecutive sentences

on appeal. Because he does not show cause and prejudice or a fundamental miscarriage of justice excusing the procedural default, federal habeas relief is unavailable.

## II.    Relief on the Merits

### A.    Legal Standards

When a petitioner has exhausted his federal claims, this Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett* , 393 F.3d 943, 978 (9th Cir. 2004),    *cert. denied,* 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006). In conducting its review, the Court "look[s] to the last-reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003), *cert. denied,* 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests,    *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different

result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)), *cert. denied*, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d at 1067). Under the "'unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), *cert. denied*, 534 U.S. 1038 (2004). Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process

employed by the state court is defective, . . . or that no finding was made by the state court at all."

*Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues . . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court."[3] *Taylor*, 366 F.2d at 1000.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. The Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective assistance of counsel. *Williams*, 529 U.S. at 390.

---

[3]    Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error. . . . Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor*, 366 F.3d at 1000.

Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. 668, 687 (1984); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Williams v. Taylor,* 529 U.S. 362, 390 (2000). Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. There is a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell,* 535 U.S. at 695; *Williams,* 529 U.S. at 390-91; *Strickland,* 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Williams,* 529 U.S. at 391 (quoting *Strickland,* 466 U.S. at 694).

**B.    Analysis**

### 1. Failure to Assure Petitioner's Presence at Re-Sentencing

Petitioner alleges his trial counsel provided constitutionally ineffective assistance by failing to ensure Petitioner's presence at re-sentencing after the remand issued by the Oregon Court of Appeals in *Walton II*.

A criminal defendant "has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend

against the charge.'"    *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934) *overruled in part on other grnds, Malloy v Hogan*, 378 U.S. 1 (1964)).  A defendant's presence is not constitutionally required "when [his] presence would be useless, or the benefit but a shadow." *Id*. (quoting *Snyder* 291 U.S. at 106-107); *see also United States v. Gagnon*, 470 U.S. 522, 527 (1985) (defendants' absence did not violate the Due Process Clause where their presence was not needed to "ensure fundamental fairness" and they could not have added to or gained from being present).

As noted above, the remand directed the trial court to vacate Petitioner's Robbery sentence and enter judgment merging it with the greater offense.  The trial judge entered an amended judgment carrying out this directive without hearing and without Petitioner's appearance before him.  In his written opinion explaining the limitation on his authority on remand, the trial judge stated:

> The Court of Appeals did not remand this case for resentencing. . . .  [T]he remand was limited to the particular actions specified:  vacation of the robbery sentence and entry of amended judgment merging the lesser included offense.  [Such a] limited remand restricts the authority of the trial court to take actions outside the scope of remand.

Resp. Exh. 148, p. 2 (citing *State v. Boots*, 315 Or. 572, 576-77, 848 P.2d 76, *cert. denied*, 114 S.Ct. 606 (1993)).

The PCR trial court reached the same conclusion, as evidenced by the following findings of fact and conclusion of law:

FINDINGS OF FACT

* * *

35.    After Petitioner's first [sic] appeal to the Court of Appeals, the Court remanded petitioner's case for the limited purpose of allowing the sentencing court to vacate petitioner's sentence for Robbery I and merge petitioner's Robbery I conviction with one of his convictions for Aggravated Murder.  The sentencing court did precisely that, concluding that the Court of Appeal's remand was limited to the particular actions specified, and that the remand order limited its authority to take actions outside the scope of remand.

* * *

54.    Petitioner reasonably could have been expected to raise his claim that the sentencing court was barred from modifying petitioner's sentence while petitioner was not present after the second remand.  Petitioner did not raise the issue and alleges no facts to show why he reasonably could not have been expected to raise the issue.

55.    Petitioner's presence at any hearing the court held concomitant with carrying out the Court of Appeal's mandate after the second remand was immaterial.  The Court's authority to modify petitioner's sentence was limited, and it could only do what it was ordered to do.  Petitioner's presence at the hearing could not have changed that.

CONCLUSIONS OF LAW

1.    Petitioner failed to prove by a preponderance of the evidence that his trial counsels' conduct and defense of petitioner was ineffective or that he was denied adequate assistance of counsel as guaranteed by the United States and Oregon Constitutions, or that his defense was prejudiced by his trial counsel's performance.

* * *

4.    Petitioner has failed to prove by a preponderance of the evidence that he was denied a fair sentencing hearing in the second and third sentencing phases of the case, or that he was denied a substantial right guaranteed by the Federal or State Constitution.

Resp. Exh. 165, pp. 8, 10-11.

The PCR judge's decision on this claim was not clearly contrary to or an unreasonable application of *Stincer*. Entry of an amended judgment vacating the robbery conviction and merging it with one of the Aggravated Murder convictions after the second remand was a ministerial task. Petitioner's presence at a hearing, had one been held, could not and would not have changed the outcome. As such, Petitioner's trial counsel was not ineffective for failing to assure Petitioner's presence when the trial court modified the judgment, and habeas corpus relief is not available on this claim.

### 2. Failure to Communicate Entry of a New Judgment to Petitioner Before the Time to Appeal Expired

Petitioner alleges attorney Cross provided constitutionally ineffective assistance of counsel by failing to notify Petitioner of entry of the amended judgment after the second remand before the time to appeal the amended judgment expired. The PCR trial judge denied relief on the merits of this claim as well, stating:

FINDINGS OF FACT

* * *

35.    After petitioner's first appeal to the Court of Appeals, the Court remanded petitioner's case for the limited purpose of allowing the sentencing court to vacate petitioner's sentence for Robbery I and merge petitioner's Robbery I conviction with one of his convictions for Aggravated Murder. The sentencing court did precisely that, concluding that the Court of Appeal's remand was limited to the particular actions specified, and that the remand order limited its authority to take actions outside the scope of remand.

36.    It is unlikely the Court of Appeals would have revisited the consecutive sentences issue had counsel filed a Notice of Appeal after the second remand. Petitioner's challenge to the consecutive nature of the sentences was rejected by the Court of Appeals in petitioner's first appeal to the Court of Appeals. Also, it was impossible for petitioner's counsel to raise the

issue before the sentencing court on the second remand because of the limited remand order, and thus, was not an issue appropriately brought in an appeal from the second remand.

\* \* \*

CONCLUSIONS OF LAW

\* \* \*

2.      Petitioner failed to prove by a preponderance of the evidence that his appellate counsels' conduct and defense of him was ineffective or that he was denied adequate assistance of appellate counsel as guaranteed by the United States and Oregon Constitutions, or that his defense was prejudiced by his appellate counsels' performance.

Resp. Exh. 166, p. 10.

The PCR judge applied the wrong legal standard. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court imposed a framework for evaluating the deficient performance requirement of *Strickland* as to an ineffective assistance of counsel claim based on counsel's failure to file a notice of appeal without a prisoner's consent. Where a defendant does not specifically instruct counsel to either file or not file a notice of appeal, the court must first determine whether counsel consulted with the defendant regarding an appeal.    *Flores-Ortega*, 528 U.S. at 478.  If counsel has not done so, then the court must determine whether that failure to consult in and of itself constituted deficient performance. *Id.*

Counsel is not always constitutionally required to consult with a defendant regarding filing a notice of appeal. *Id.* at 479.  However, counsel *is* constitutionally required to do so "when there is reason to think either (1) that a rational defendant would want to appeal (for example because

there are nonfrivolous grounds for appeal), *or* (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."    *Flores-Ortega*, 528 U.S. at 480 (emphasis added).   In making this determination, the court must take into account "all the information counsel knew or should have known." *Id.*

To show the prejudice required by *Strickland*, the Court in *Flores-Ortega* held that the defendant "must demonstrate that there is a reasonable possibility that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.  Prejudice does not require that a petitioner show that he had meritorious grounds for appeal, but "evidence that there were nonfrivolous grounds for appeal or that the [petitioner] in question promptly expressed a desire to appeal will often be highly relevant in making" the determination whether there is a reasonable probability that the petitioner would have appealed.  Thus, the petitioner "does not have to show that he might have prevailed on appeal to show prejudice, just that he probably would have appealed had his lawyer asked." *U.S. v. Sandoval-Lopez*, 409 F.3d 1193, 1196 (9th Cir. 2005).

Here, the PCR judge did not address the first portion of the   *Flores-Ortega* framework. Instead, the judge applied the incorrect legal standard to determine whether Petitioner suffered prejudice.  The question is not, as the PCR judge framed it, whether the appeal might have had merit, but instead, whether, "but for counsel's deficient conduct, [the petitioner] would have appealed." *Flores-Ortega*, 528 U.S. at 486.

The PCR court's decision was thus "contrary to . . . established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).  As such, this court must proceed to review *de*

*novo* the constitutionality of Petitioner's continued state detention. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S.Ct. 2842, 2858 (2007) (when "the requirement set forth in § 2254(d)(1) is satisfied [, a] federal court must then resolve the [constitutional] claim"); *see also Frantz v. Hazey*, 533 F.3d 724, 739 (9th Cir. 2008) ( *en banc*) (if there is § 2254(d)(1) error, court must decide the habeas petition by considering *de novo* the constitutional issues raised).

Here, after the Oregon Court of Appeals remanded the case in *Walton II*, the trial court initially scheduled a hearing for the re-sentencing. Counsel submitted briefs arguing against the imposition of consecutive sentences. Petitioner was physically transported to the courthouse for the scheduled hearing. Petitioner had with him a *pro se* motion for a new trial, which he sent to the court before the hearing, and which it appears from the record his attorney received and discussed with him.

The trial judge subsequently decided his authority was limited by the remand, cancelled the hearing, and entered the amended judgment. At the time scheduled for the hearing, Petitioner did not know why it had been cancelled, and thought it would be re-scheduled. When he did not hear anything further, Petitioner wrote his attorney asking when the re-sentencing would occur. The attorney realized a letter he had written to Petitioner explaining entry of the amended judgment and containing a copy of the trial judge's opinion had been returned to him, and had not been re-sent. By then, the time to appeal had expired. The attorney wrote a letter to Petitioner explaining:

> I have to apologize for you [sic] not getting the sentencing documents to you in a timely fashion. I am enclosing the original letter that I sent to you with the court's decision. I am enclosing the original letter that I sent to you with the court's decision. As I told your mother, my letter and the enclosures were returned to me as having been "refused". I assumed that you had refused to accept them for some reason. I have been meaning to resend the letter and enclosures to you along with

the amended judgment which is also enclosed, but unfortunately the returned letter got buried on my desk.

I have talked with your mother a couple of occasions about all of this. I got another call from her today. She has obviously spoken with you since my last conversation with you. She let me know that you had not refused any mail, so I checked with the mail room at OSP to find out why my letter was returned. They pointed out to me that my secretary had neglected to include a return address on the envelope, so that the letter never reached you. As it was marked as legal mail they did not open it to see who it was from. Apparently the post office did open the letter in order to determine who to return the it [sic] to.

As you can see from my original explanatory letter as well as the court's written opinion and amended judgment, Judge Redding rejected all of our arguments, and held that he need not and could not address the issue of the consecutive sentences because of the specificity of the remand from the Supreme Court [sic - it was actually the Oregon Court of Appeals]. As you know, I believe the sentence imposed to be a violation of both the federal and state constitutional due process and cruel and unusual punishment provisions.

The delay in my getting these materials to you is totally my responsibility. I do not believe that the Oregon appellate courts would have addressed your claims due to the posture of the case the limited reason for remanding. Nonetheless, my inadvertent delay in informing you of the final decision may allow you to appeal Redding's ruling despite the expiration of the time for the filing of a notice of appeal. If not, the delay raises one more possible grounds [sic] for an ineffective assistance argument, at least in terms of your ability to have filed a timely notice of appeal.

Resp. Exh. 149, p. 2.

Under these circumstances, the first part of the *Flores-Ortega* framework is not in question.

There is no evidence Petitioner's attorney consulted with him about filing an appeal before the time

expired. The court must then, turn to the next question, whether there is reason to think either that

a rational defendant would have wanted to appeal, *or* that Petitioner himself reasonably

demonstrated to his attorney that he was interested in appealing.

Other than counsel's letter, this court has no further direct evidence as to what Petitioner's attorney *actually knew* about Petitioner's intent to appeal. The letter implies counsel assumed Petitioner would want to do so, but Petitioner presents no evidence that he told the attorney he would want to pursue an appeal, though he did testify that he would have appealed the consecutive sentence after the final remand.

On the other hand, the circumstantial evidence indicates counsel *should have known* Petitioner would have appealed had he received a proper consultation with his attorney. Petitioner was actively involved in challenging his conviction and sentence, and had obviously conveyed to counsel his dissatisfaction with them. He was actively attempting to litigate a motion for new trial at the time of the re-sentencing, and argued vehemently against the imposition of the sentences imposed. When the re-sentencing hearing was cancelled and Petitioner heard nothing further, he took the initiative and contacted counsel to ask when the hearing would be re-scheduled. Petitioner was obviously in contact with his mother, who in turn was speaking to counsel during the time between the entry of the amended judgment and counsel's discovery of the mail error. In sum, the record demonstrates that Petitioner took a pro-active role in his defense at all stages of this case, over the course of many years.

Based upon the record before this court, Petitioner's trial counsel had a constitutional duty to confer with Petitioner about an appeal from the second re-sentencing, because this particular Petitioner reasonably demonstrated to counsel that he was interested in appealing. Counsel's failure to timely confer prevented caused Petitioner to lose his right to appeal. Finally, but for counsel's deficient conduct, Petitioner would have filed an appeal. As such, regardless of the apparent lack

of non-frivolous grounds for appeal, *Flores-Ortega* requires this court to grant habeas corpus relief requiring Respondent to allow Petitioner to initiate and prosecute an appeal from the amended judgment.

**III.    *Pro Se* Claims Incorporated by Reference**

Finally, the Amended Petition for Writ of Habeas Corpus filed by counsel on Petitioner's behalf contains the following ground for relief:

> G.    In addition to the specific errors set forth herein, [Petitioner] realleges [sic] and incorporates herein, insofar as permitted by this Court's rules, the claims and arguments set forth in the Trial Memorandum attached to his original Petition for Writ of Habeas Corpus and attached hereto as Exhibit 1 and the Pro Se Supplemental Memorandum attached to his original Petition for Writ of Habeas Corpus and attached hereto as Exhibit 2.

The "Trial Memorandum" was prepared by Petitioner's court-appointed attorney in the PCR proceeding, and consists of 78 pages of legal argument interspersed with copies of the Oregon courts' decisions in *Walton I* and *Walton II*.  The Trial Memorandum lists 22 claims of ineffective assistance of trial counsel, 3 claims of ineffective assistance of appellate counsel, 6 claims of trial error, and 10 claims of prosecutorial misconduct.

The "Pro Se Supplemental Memorandum" submitted by Petitioner following the PCR trial is 49 pages long.  It supplements the arguments on several of the claims discussed in the "Trial Memorandum," and includes an additional 9 claims for relief not discussed in the "Trial Memorandum."

Respondent argues Petitioner cannot obtain relief on the claims incorporated by reference from the "Trial Memorandum" and "*Pro Se* Supplemental Memorandum" for two reasons:  (1) the attempt to incorporate the state court memoranda does not meet the pleading requirements of Rule

2 of the Rules Governing § 2254 Habeas Cases; and (2) Petitioner did not submit any argument on the incorporated claims in his Memorandum in Support of Amended Habeas Petition.  Respondent further notes, in a footnote, that if the court intends to consider the claims incorporated by reference, Petitioner should be required to make them more definite and certain by amending his petition to include any claims which are not time-barred.

Certainly, this court would prefer that appointed counsel address all claims alleged in the Amended Petition, particularly when, as here, counsel has filed an Amended Petition on Petitioner's behalf.  Moreover, the incorporation of trial memoranda which, logically, consists of extensive legal arguments in addition to a statement of the claims, does not satisfy the pleading requirements of Rule 2.[4]  That said, the court does not agree that the claims should be stricken or that counsel's failure to address them in the Memorandum in Support of Amended Petition automatically results in a waiver.  District Judge Marsh of this court recently addressed this issue in *Elkins v. Belleque*, 06-1180-MA:

> Respondent relies upon 28 U.S.C. § 2248 which provides that the allegations of a return to a habeas petition, or an answer to an order to show cause, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."
>
> However, the Advisory Committee Notes to Rule 5 of the Rules Governing Section 2254 Proceedings, provides that a traverse is no longer contemplated "except under special circumstances", and that the common law assumption of verity of the allegations of a return until impeached, as codified in 28 U.S.C. § 2248, is no longer applicable." Advisory Committee Note to Rule 5, 28 foll. § 2254 (1976) (citing *Stewart v. Overholser*, 186 F.2d 339, 343 n. 5 (D.C.Cir. 1950)). In light of the foregoing, and in the absence of any case law supporting respondent's

---

[4] Counsel is reminded that "[j]udges are not like pigs, hunting for truffles buried in briefs." *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (citation omitted).

> position that the failure to furnish legal argument in support of habeas claims renders the claims abandoned, I decline to find the claims not traversed to be waived or subject to denial on that basis alone."

Opinion and Order (#35) at 5-6.

The court finds Judge Marsh's reasoning persuasive and, consequently, rejects respondent's assertion that Petitioner has waived the grounds for relief set forth in the incorporated trial memoranda. However, having undertaken the lengthy review of the claims and arguments set forth therein, the court concludes habeas corpus relief is not warranted because they are either procedurally defaulted or the state courts' denial of relief is entitled to deference.

## RECOMMENDATION

For these reasons, the Amended Petition for Writ of Habeas Corpus should be GRANTED IN PART and DENIED IN PART. The Petition should be GRANTED on Petitioner's claim of ineffective assistance of appellate counsel for failure to communicate entry of final amended judgment within the time required to appeal such judgment. A conditional writ of habeas corpus should be granted ordering Petitioner's release from state custody unless the state permits Petitioner to initiate and prosecute a direct appeal from the amended judgment within 120 days. The Petition should be DENIED on all other grounds.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 26, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this ⟋⟍ day of May, 2009.

John V. Acosta
United States Magistrate Judge